IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

irth Solutions, LLC,

        Plaintiff,

v.

Windstream Communications, LLC,

        Defendant.

Case No: 2:16-cv-219

Judge Graham

Opinion and Order

This matter is before the Court on the motion of defendant Windstream Communications, LLC for reconsideration of the magistrate judge's August 2, 2017 Opinion and Order, 2017 WL 3276021. The magistrate judge found that Windstream had waived its attorney-client privilege with respect to 43 documents which it twice produced to plaintiff irth Solutions, LLC. The Court may reconsider any part of the magistrate judge's order that is shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a).

I.

The factual background of this dispute is thoroughly described in the magistrate judge's order and need not be fully recited here. Notably, four weeks after the deadline for production of documents, defendant electronically produced 2200 pages of documents, of which only 1400 pages were in a readable format. Included in the readable documents were 43 documents (totaling 146 pages) that defense counsel, Jacqueline Matthews, later recognized as privileged when she was preparing a privilege log about 12 days after their production.[1] The privileged nature of the 43 documents was initially missed because Ms. Matthews's co-counsel, Marissa Black, who reviewed the documents for privilege, was not familiar with the name of Windstream's in-house counsel. This occurred even though, as the magistrate judge observed, in-house counsel's name and position were

---

[1] Defense counsel did not prepare a privilege log at the time of production even though she had withheld four documents, which are not at issue here, as privileged but failed to inform plaintiff's counsel of their withholding.

1

displayed prominently on several of the 43 documents. Ms. Matthews's pre-production check of Ms. Black's review did not catch the privileged documents either.

Upon discovering that she had produced privileged documents, Ms. Matthews contacted plaintiff's counsel and requested a clawback of the 43 documents. Counsel had previously agreed that an inadvertent disclosure (a term not defined in the agreement) would not waive the attorney-client privilege. Plaintiff's counsel sequestered the 43 documents and did not show them to his client, but he challenged the assertion that the clawback agreement applied because he believed the disclosure resulted from more than mere inadvertence.

Two months after the first production, and "in the midst of arguing to this Court that it should protect Defendant's attorney-client communications and award it fees and costs, . . . defense counsel again produced the privileged documents." Aug. 2, 2017 Magistrate Judge Order, 2017 WL 3276021 at *4. Defense counsel, who was responding to a request from plaintiff's counsel to make the produced documents text-searchable, instructed litigation support staff to perform the task of converting the documents. Ms. Matthews created an electronic folder of the documents that needed to be converted; the 43 privileged documents were not in the folder. The litigation support staff, however, drew from a different folder, which did contain the 43 documents. After the documents were converted, Ms. Matthews performed a spot check but did not notice the inclusion of the 43 privileged documents. Upon receiving the production, plaintiff's counsel noticed the 43 documents and again sequestered them.

II.

Counsel jointly notified the magistrate judge of their dispute over defendant's claims of privilege and non-waiver regarding the 43 documents. The magistrate judge conducted a hearing in which the parties were given the opportunity to submit evidence. In addition, the parties submitted pre- and post-hearing briefs. The documents at issue were provided to the magistrate judge for *in camera* review.

The magistrate first found that the 43 documents are privileged under Ohio law – a finding that is not challenged and is hereby adopted by the Court.

Turning to the issue of waiver, the magistrate applied Federal Rule of Evidence 502, which governs disclosures of privileged documents in a federal proceeding. Rule 502 provides in part:

> (a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection,

2

the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

(b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:

> (1) the disclosure is inadvertent;
>
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(a) and (b).

The magistrate judge found that Rule 502 presents a "binary choice" for classifying a disclosure: intentional or inadvertent (a term not defined by the Rule). Aug. 2, 2017 Mag. J. Order, 2017 WL 3276021 at *8. Where a party intended for privileged documents to be produced, Rule 502(a) governs the scope of the waiver. Where a party did not intend for privileged documents to be produced, but they were produced through mistake, negligence or recklessness, then Rule 502(b) governs whether there has been a waiver of the privilege. Id. (reviewing the case law and the language of Rule 502 and concluding that Rule 502 "does not distinguish between 'negligent disclosure' and 'inadvertent disclosure'"). The magistrate assumed that the two productions were inadvertent because the record developed here did not contain concrete evidence showing that defendant intended to produce privileged documents.[2]

---

[2] Defendant objects that the magistrate assumed, rather than made a finding, that the two disclosures were inadvertent. The magistrate made the assumption because defendant did not adduce any evidence from Ms. Black or the litigation support staff member – "the individuals best equipped to explain the allegedly unintentional productions." Aug. 2, 2017 Mag. J. Order, 2017 WL 3276021 at *9. Plaintiff has not, in response to the magistrate's assumption regarding inadvertence, argued that the evidence supports a finding of intentional disclosure. Accordingly, the Court adopts the magistrate's assumption as a finding that the disclosures were inadvertent for purposes of Rule 502(b).

Before applying the remaining two elements of Rule 502(b)'s three-part test for waiver, the magistrate judge addressed the interplay between Rule 502(b) and the parties' clawback agreement. Under Rule 502(e), parties may agree on the effect of disclosure in a federal proceeding, and courts have recognized the ability of parties to contract away from Rule 502(b)'s test for waiver. The magistrate reviewed the three different approaches that courts have taken on the matter: (1) "that a clawback arrangement (no matter how cursory) requires the return of inadvertently produced documents, regardless of the care taken by the producing party"; (2) "that where there is a protective order with a clawback provision, inadvertent production of a document does not constitute waiver unless the document production process itself was completely reckless"; and (3) that "the requirements of Rule 502(b) can be superseded by a clawback agreement only to the extent such an order or agreement provides concrete directives regarding each prong of Rule 502(b) i.e., (1) what constitutes inadvertence; (2) what precautionary measures are required; and (3) what the privilege holder's post-production responsibilities are to escape waiver." Id. at **9-11 (internal quotation marks, alterations, emphasis and case citations omitted).

Noting that the Sixth Circuit has not yet addressed the issue, the magistrate rejected the first approach because allowing attorneys to agree to a clawback irrespective of the care they took during production "would undermine the lawyer's responsibility to protect the sanctity of the attorney-client privilege." Id. at *12. She further found that, in any event, the clawback agreement in this case did not contain language that would have eliminated the duty of pre-production review or provided for non-waiver regardless of the care taken by the producing party.

The magistrate found that waiver had occurred under both the second and third approaches; thus, she did not find it necessary to choose one approach over the other. She found under the second approach that defense counsel was completely reckless because, among other things: Ms. Black failed to become familiarized with the identity of in-house counsel; "the documents contain obviously privileged material on their face"; the privileged documents were not a needle-in-the-haystack but comprised "more than 10% of the entire production" of 1400 readable pages; and counsel "produced the exact same documents again – while simultaneously asking this Court to protect its privilege." Id. at **13-14.

Under the third approach, the magistrate found that the parties' clawback agreement was "cursory" because the agreement, while stating that inadvertent disclosure would not waive the privilege, did not define what constitutes inadvertence or state what precautionary measures, if any, should be taken to prevent disclosure. Id. at *14. This meant that the duty under Rule 502(b)(2) to

4

take "reasonable steps to prevent disclosure" was not displaced. The magistrate found that defense counsel did not take reasonable steps to prevent disclosure for the same reasons that she found counsel's conduct to be completely reckless. Id. (noting further that "defendant had months to review the documents").

Having concluded that defendant waived its attorney-client privilege, the magistrate determined that the waiver was limited to the 43 documents and did not constitute a full-subject matter waiver.

Finally, the magistrate rejected defendant's motion to sanction plaintiff for not destroying or returning the 43 documents. The magistrate observed that plaintiff's counsel had sequestered the documents and that under Fed. R. Civ. P. 26(b)(5)(B) a party must "return, sequester, or destroy" documents which are subject to a claim of privilege. Though defense counsel argued that the clawback agreement limited those options to "destroy or return," the magistrate was satisfied that plaintiff's counsel acted appropriately "in the midst of confusion regarding if and how the clawback agreement applied." Id. at *15.

III.

Defendant's objection to the magistrate judge's order concerns whether the parties' clawback agreement should supersede Rule 502(b). The clawback agreement was memorialized in an email exchange between counsel as three bullet points:

> • If a producing party discovers that it has inadvertently produced a document that is privileged, the producing party will promptly notify the receiving party of the inadvertent production.
>
> • The receiving party will promptly destroy or return all copies of the inadvertently-produced document.
>
> • Inadvertent production of privileged documents does not operate as a waiver of that privilege.

(Doc. 45-1 at PAGEID #: 307).

Defendant argues that the "plain terms" of the clawback agreement "as written" provided that the parties had no duty of care to prevent disclosure. (Doc. 60 at PAGEID ## 488-89). The clawback agreement, however, does not so provide in express or plain terms. Defendant's position thus depends upon interpreting the agreement's silence regarding precautionary measures as meaning that the parties had no duty prevent inadvertent disclosure.

5

The Court notes that in order for defendant to prevail on its objection, the first approach identified by the magistrate judge – where even a cursory clawback agreement requires the return of inadvertently produced documents, regardless of the care taken by the disclosing party – must be adopted. Defendant's objection does not relate to the second or third approaches. That is, defendant does not object to the magistrate's finding that defense counsel was "completely reckless" in disclosing the 43 documents. Nor does defendant object to the magistrate's findings that the clawback agreement lacked concrete directives regarding each prong of Rule 502(b) and that defense counsel failed to take reasonable steps to prevent disclosure.

The magistrate judge cited several unpublished cases which have adopted the first approach. See Aug. 2, 2017 Magistrate Judge Order, 2017 WL 3276021 at *4. These cases reason that because Rule 502 permits an agreement or court order on the effect of disclosure, a clawback agreement "defeat[s] the default operation of Rule 502(b)" and eliminates the duty to take reasonable steps in pre-production privilege review. Rajala v. McGuire Woods, LLP, No. CIV.A. 08-2638-CM, 2013 WL 50200, at *5 (D. Kan. Jan. 3, 2013). This approach has the advantage of curbing the costs of pre-production review for privilege and work product. Id. at *4.

The magistrate rejected the position that Rule 502(b)'s standard is displaced by a clawback agreement which is silent on the issue of what precautionary measures, if any, parties should take to prevent inadvertent disclosure. She found as follows:

> To be clear, the Court acknowledges that clawback agreements are powerful. They are one tool (among many), which Rule 502 affords to attorneys to protect the sanctity of the attorney-client privilege. If drafted thoughtfully and then followed, clawback agreements effectuate the dual purposes of Rule 502 – providing a predictable, uniform set of standards under which parties can determine the consequences of a disclosure, while simultaneously reducing discovery costs. For example, the predictability is achieved when the parties draft an agreement that is explicit in stating that Rule 502(b)'s reasonableness prong is irrelevant. See Great-W. Life & Annuity Ins. Co. [v. Am. Econ. Ins. Co., No. 2:11-CV-02082-APG, 2013 WL 5332410, at *13 (D. Nev. Sept. 23, 2013)] ("It goes without saying that parties must adequately articulate the desire to supplant analysis under Rule 502(b) in any agreement under Rule 502(d) or (e)."). And discovery costs are reduced when clawback agreements outline discovery mechanisms that may not pass muster under Rule 502, such as eliminating the need for any pre-production review or enabling lawyers and parties to use computer-based analytical methods to search for and identify privileged and protected information. See [Paul W. Grimm, Lisa Yurwit Bergstrom, & Matthew P. Kraeuter, *Federal Rule of Evidence 502: Has it Lived Up to Its Potential?*, 17 RICH. J.L. & TECH 8, at 37 (2011)].

> But for clawback agreements to serve these purposes, lawyers must draft them with care. Indeed, the advisory committee's note states parties "*may* provide for return of documents without wavier irrespective of the care taken by the disclosing party." Fed. R. Evid. 502(d) advisory committee's note (emphasis added). Further, the Court notes that these arrangements are enforceable, even if inconsistent with Rule 502. See John M. Facciola, *Sailing on Confused Seas: Privilege Waiver and the New Federal Rules of Civil Procedure*, 2 Fed. Cts. L. Rev. 57, 60 (2007) (explaining that by arrangement, parties can allow for a "sneak a peek" in which "the lawyers for the opposing sides review the collected information by general categories in the hopes of eliminating the useless ones. If that review goes deeper . . . the lawyers [can] agree that their doing so is not a waiver of the privilege even if the review does disclose a privileged document to opposing counsel.").
>
> All of this is to say that the Court reads Rule 502 as providing lawyers a variety of mechanisms by which to protect the attorney-client privilege. Considering Rule 502's text and purpose, the parties' agreement, and counsel's actions, the Court rejects the first approach in this case. To find otherwise would undermine the lawyer's responsibility to protect the sanctity of the attorney-client privilege. See U.S. ex rel. Fry v. Health All. of Greater Cincinnati, No. 1:03-CV-167, 2009 WL 2004350, at *2 (S.D. Ohio July 7, 2009) ("[T]he confidentiality of communications covered by the privilege must be zealously guarded by the holder of the privilege lest it be waived. *The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.*") (internal quotations omitted) (citing In re Sealed Case, 877 F.2d 976, 980 (D.C. Cir. 1989) (emphasis in original)).

Aug. 2, 2017 Magistrate Judge Order, 2017 WL 3276021 at *12.

The Court finds that defendant has not demonstrated that the magistrate judge's rejection of the first approach is clearly erroneous or contrary to law. Indeed, the Court agrees fully with the magistrate judge's analysis and adopts it as its own. The Court finds that Rule 502(b)(2) provides an important safeguard of the attorney-client privilege and that if parties wish to remove that safeguard, their agreement must reflect such an understanding. As the magistrate noted, the clawback agreement here lacked any language to support a finding that the parties came to an understanding that there would be no pre-production review. Id. at *13 ("The agreement does not mention eliminating pre-production review, engaging in a document dump or a sneak a peek arrangement, or that no waiver will occur regardless of care taken by the producing party. Following the first approach here would effectively re-write the parties' agreement into something it was not, and the Court refuses to do so."). Moreover, the email memorializing the parties' clawback agreement also contained a provision requiring the parties to provide privilege logs for all documents withheld on the basis of attorney-client privilege or other protection – showing that the parties did in fact contemplate meaningful pre-production privilege review. (Doc. 45-1 at PAGEID #307).

7

Finally, the Court rejects defendant's objection to the magistrate's refusal to sanction plaintiff's counsel. The magistrate's finding that counsel's decision to sequester the documents was not inappropriate under the circumstances is not clearly erroneous or contrary to law.

IV.

Accordingly, defendant's objections (doc. 60) to the magistrate judge's August 2, 2017 Opinion and Order are overruled.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: January 26, 2018